The right of the plaintiff to a legacy of $3000, under the will of William How, deceased, is contested by the defendants, who are the residuary legatees. The only question is whether the plaintiff, whose corporate name is "The New-York Institution for the Blind," is entitled to a legacy given to the "trustees of the institution for the maintenance and instruction of the indigent blind in the city of New-York," it appearing that there was not, at the time of making the will, and never has been, in the city of New-York, any other institution for the blind except the plaintiff.
It is conceded that a legacy may be given to a corporation or an individual, either by name or by description. If by the former, the legatee need not be called idem syllabis seuverbis. It is sufficient if it be idem re et sensu. (TheMayor *Page 90 and Burgesses of Lynn, 10 Coke, 124.) I think the misnomer in this case is too great to allow the plaintiff to take the bequest by name, and so far I concur with the learned justice who delivered the opinion in the supreme court. The name is not the same, nor is it the same in substance and meaning, nor is it shown that the plaintiff was known by the name mentioned in the will or was ever called so by the testator. (Leon., 159,cited 10 Coke, 123; 1 Jarman on Wills, 331; 1 Vesey, Jr.,
266; 3 Vesey, 148; 3 Pick., 232; 2 Dallas, 74; Cro.Eliz., 106; 7 Metc., 416.) I do not think it was the intention of the testator to name the object of his bounty, but to describe it; and it is therefore necessary to ascertain whether the description is sufficient to designate the plaintiff so as to distinguish it from all others. (Thomas v. Marshfield, 10Pick., 367.)
Is the plaintiff in fact an institution for the maintenance and instruction of the indigent blind in the city of New-York? It is in the city of New-York, and is therefore within the latter part of the description, but it is denied that it comes within the former part of the description. The plaintiff was incorporated on the 21st of April, 1831 (Laws of 1831, 256), "for the purpose of instructing children who have been born blind or who may have become blind by disease or accident." So far it was only an institution for instructing the blind, and would not be described by the words "maintenance" and "indigent." But in 1834 an act of the legislature was passed (Laws of 1834, 581), authorizing the plaintiff "to receive from each of the then senate districts four indigent blind persons, between eight and twenty-five years of age, in like manner and at the like expense to the state as is provided by law for the indigent deaf and dumb." And by subsequent acts (Laws of 1836, 293, 593; Laws of 1839, 171) the number was increased to sixteen from each senate district, making in all one hundred and twenty-eight indigent blind persons to be instructed in the *Page 91 
institution. It became, therefore, by these acts, an institution for the "indigent" blind.
But the word "maintenance" is not used in either of these statutes. It will be seen, however, that it was not only contemplated but provided for. These indigent pupils were received in like manner as was provided by law for the indigent deaf and dumb; and a reference to the statutes providing for the indigent deaf and dumb shows that they were maintained as well as instructed at the expense of the state. The act of 1822 (Lawsof 1822, 248, § 5) declares "that each indigent pupil so received shall be provided with board, lodging and tuition," to be paid for out of the state treasury. The act of 1830 (Laws of
1830, 185, § 2) provides that "the yearly expense to be paid out of the treasury for the support of such pupils shall not exceed the sum of $130 for each pupil." The preamble of the charter of "The New-York Institution for the Instruction of the Deaf and Dumb" expressly recites that the object of the institution is represented to be the support and maintenance as well as the instruction of the indigent deaf and dumb. It is evident therefore that the plaintiff was authorized to maintain and instruct the indigent blind, and was employed by the state for that purpose. Such maintenance became, from that time, if it was not before, one of the objects of the institution, and such it was at the time the will was executed and has continued to be until the present time.
I do not think it is necessary for the plaintiff to show that the maintenance and instruction of the indigent blind were the sole objects of this institution; it is enough if they were among its objects. The fact that indigent blind persons were maintained and instructed there made it an "institution for the maintenance and instruction of the indigent blind." The expression seems to me to mean nothing more than "the institution where indigent blind persons are maintained and educated." And if the latter expression had been used instead of the former, it would hardly be *Page 92 
contended that the description was not applicable to the plaintiff alone, it appearing, as it plainly does, that there was no other institution in New-York where the blind were maintained and educated. Indeed, I think it is apparent, from the general helplessness of those intended to be relieved, the tenor of the charter and subsequent acts, and the plan adopted to sustain it, that the principal object of the institution was the relief of the indigent blind, whose maintenance was necessarily connected with their instruction. It was frequently an applicant for state as well as individual bounty. In 1836 the state gave to the institution $12,000 on condition that the managers should raise $8000; in 1839, $15,000 on condition that the managers should raise $10,000; and in 1845, $5000 a year for five years. (3R.S., 239, 3d ed.)
A bequest to the trustees of the institution was a bequest to the institution itself (13 John., 38; 6 Hill, 476; 10 N.H.,
123), and it was none the less so because those having charge of it are called "managers" in the charter. They are still trustees and known in law under that name. (1 R.S., 600, §§ 9, 10; 2R.S., 462, § 33.) My conclusion therefore is, that the plaintiff was plainly intended and sufficiently described as the object of the testator's bounty, and that the judgment of the supreme court and the decree of the surrogate should both be reversed, and that the proceedings be remitted, with directions that a decree be entered in favor of the plaintiff for the amount of the legacy with costs.
All the judges concurred.
Ordered accordingly. *Page 93